Tom, J.P., and DeGrasse, J.,
dissent in part in a memorandum by DeGrasse, J., as follows: I respectfully dissent because, in my view, the motion court properly granted defendants’ motion for summary judgment with respect to the claim of unlawful retaliation in violation of the New York City Human Rights Law (the City HRL) (Administrative Code of City of NY § 8-107 [7]). Where pertinent, the City HRL provides that “[i]t shall be . . . unlawful... to retaliate ... in any manner against any person because such person has . . . opposed any practice forbidden under this chapter” (id.). In order to make out a claim of unlawful retaliation under the City HRL, a plaintiff must establish “that (1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action” (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 312-313 [2004]).*
Here, plaintiff claims to have engaged in a protected activity by making complaints in a May 18, 2009 letter that she delivered to Rena Martinez, defendant Concentric Health Care, LLC’s human resources director, and Robert Gomes, its senior vice president and controller. I disagree with the majority’s conclusion *530 that the letter constituted a complaint about age-related bias and was therefore a protected activity. The letter did not set forth any grievance about age discrimination or any other practice forbidden by the City HRL. Instead, plaintiff complained about business practices she considered unethical and what she described as Concentric’s “frat like atmosphere” that made her feel uncomfortable. Contrary to the majority’s interpretation, plaintiff did not state in the letter that she was scrutinized and held to a higher standard because of her age. In that regard, the letter reads as follows: “I, on the other hand, am always here on time, never call in sick, certainly never had a day I couldn’t function due to the after effects of excessive drinking, always complete my work in a timely fashion, strive for perfection with every facet of my job, work late when necessary, etc. One would think this would be a partner’s dream employee yet 1 am scrutinized and held to a higher standard. Why? I leave at 5:00 p.m. when my work is completed” (emphasis added).
Although the letter expressed grievances, it did not constitute protected activity. The term “protected activity” refers to measures taken to protest or oppose statutorily prohibited discrimination (see Serdans v New York & Presbyt. Hosp., 112 AD3d 449, 450 [1st Dept 2013]; see also McKenzie v Meridian Capital Group, LLC, 35 AD3d 676, 677 [2d Dept 2006]). The tenor of the letter is shown by its content as well as plaintiffs deposition. When questioned about her reasons for issuing the letter to Martinez and Gomes, plaintiff gave the following testimony:
“Q. So I believe you just answered in response to my question, which was did you take any action to protect your job, and your answer is that you wrote a memo to Rena, and that was with the express purpose of protecting your job, correct?
“A. It was to express what was going on and my concerns about what was going on in Concentric, and being asked to do fraudulent billing and things that I’m uncomfortable doing, illegal acts . . .
“Q. Why would you have cc’d Mr. Gomez [sic] on this letter?
“A. Because I still go back to my career in advertising, and any SVP comptroller, in my opinion, should be aware when these type [sic] of fraudulent activities are going on with respect to finance. And I couldn’t wrap my brain around how someone with that title could not be concerned about that. It was just mind-boggling to me.
“So I was once again trying to reach out to him, being Rob, to understand exactly what I was being asked to do and how illegal it was, fraudulent it was, that I couldn’t believe that an SVP *531 comptroller could condone this type of mandate from a partner to do these types of things to your [sic] client.”
Plaintiff is clearly in the best position to interpret her own writing. Plaintiffs testimony and the letter itself demonstrate that she made no complaint about age discrimination. The majority therefore misplaces its reliance on the inconsequential fact that after receiving the letter, Martinez stated in a memorandum that Concentric’s counsel “should be informed of in general age discrimination documenting complaints etc [sic].”
For the reasons stated by the majority, summary judgment was properly denied with respect to the age discrimination cause of action. I would therefore affirm the order entered below.

 After Forrest was decided, the New York City Council enacted the Local Civil Rights Restoration Act of 2005 (Local Law No. 85 [2005] of City of NY), which requires that the City HRL be construed more broadly than and separately from its state and federal counterparts. In Fletcher v Dakota, Inc. (99 AD3d 43 [1st 2012]), this Court stated that the City Council “expressly rejected Forrest’s application to claims brought under the City HRL” (id. at 52 n 2). Nonetheless, the definitions of retaliation under Forrest and Fletcher are indistinguishable with respect to the City HRL (see Fletcher, 99 AD3d at 51-52).